Nott, J.,
concurring:
Judging this case by the ordinary principles of mercantile law, without regard to the conditions which a statute of frauds may impose upon it, I think that the responsible agent of the Government — the chief of the clothing bureau — was free to do one of three things when the contractor came to him acknowledging his default and asking to be relieved from the obligations of the contract: 1st, he might have annulled the contract and told the contractor that he would receive nothing more from him ; or, 2d, he might have declared the contract forfeited, and have gone into the market and purchased the cloth, charging the contractor with the difference in cost; or, 3d, he might have insisted on performance and accorded the contractor a specific, or, in the absence of a specific, a reasonable time to fulfill his obligation.
The' facts found show that the Government did not wish to resort to the first or second of these alternatives. It needed the cloth, yet it could not avail itself of the right to buy such cloth in the market, for the facts show that no such cloth could at that time be bought. This had been represented to the chief of the clothing bureau, and he doubtless knew it apart from such representation. It is, therefore, not surprising that he *746 chose the remaining alternative and insisted on performance. When he made that election, amid the peculiar circumstances of the case, and the contractor proceeded in good faith, with all possible diligence and at a positive loss, to procure the cloth, the arrangement thus acted upon would have fixed the rights and liabilities of the parties, if not prohibited by the statute of frauds.
As to the peculiar terms of this arrangement, I deem them entirely immaterial. In all such cases a purchaser must stand upon one ground or the other. It is perfectly well settled that if such a party recognizes the continuing obligations and existence of the contract, he thereby waives a forfeiture. When the chief of the clothing bureau, with full knowledge of the facts of the misfortune which had prevented due performance, of the impossibility of procuring such stock in the market, of the necessity of procuring its manufacture if it was to be furnished at all, and, knowing these facts, said in effect to the contractor: “I cannot release you from your contract, I wifi not now assert a forfeiture, you must proceed to perform by procuring the cloth,” he thereby extended the period of performance for a reasonable time, and continued the obligation of the Government to receive the cloth if it was tendered within the same reasonable period, provided always that he had legal authority to enter into such an arrangement by parol.
It is undoubtedly true that, after the original time of performance had passed, the Government would not have been bound to the acceptance of the cloth, though it might not have asserted a forfeiture nor have enforced a penalty. In other words, while waiving the forfeiture it might have annulled the contract. But this was precisely what the chief of the clothing bureau refused to do. He did not say to the contractor, “You áre too late, the Government will not receive your cloth 5” but, on the contrary, he did say, as is found by the court, “ You must furnish the goods.’’'1 The Government, therefore, is in this position : it did not avail itself of its reserved right and buy the goods in the market; it did not declare the contract at an end and relieve the contractor from performing and itself from the obligation of receiving, but it did compel the contractor to go on and perform, with knowledge of the loss it was inflicting upon him, and with the assurance that a reasonable time would be allowed him to do that which it then and there compelled him to do.
*747 With regard to this assurance of the chief of the clothing bureau, viz, 11 that upon application to Colonel Moulton, sufficient time tootdcl be allowed to deliver the goods,” it needs only to be remarked that the chief of the bureau was the authoritative agent of the Government in this business, (13 Stat. L., p. 294, § 1,) and that Colonel Moulton, the depot quartermaster, was his mere subordinate, with no authority or discretion in the matter. ' This was the ordinary military official way of saying that the goods must be furnished, and Colonel Moulton would be directed to award sufficient time in. regard to the delivery. If there was any obligation to confer with the depot quartermaster, it rested on the chief of the bureau and not on the contractor. The matter had already been referred by the depot quartermaster to his superiors, and it was out of his control until his superiors sent it back to him. When the chief required the contractor to go on and furnish the goods, he himself thereby accorded to the contractor a sufficient time to do it in, and the reference to his subordinate was mere surplusage, which could not take away the legal consequences of his requirement.
The general principles of mercantile law require that when a man agrees to furnish goods by a day certain he must do so, or the other party will be released from the obligation of receiving them. But mercantile law does not allow the purchaser to entangle the delinquent contractor in fresh risks and obligations, and then abandon the position which he, the purchaser, has assumed. The latter may not impose needless loss or injury upon the other. The obligations of good faith and fair dealing remain as strong as at any other period of the transaction. In the great majority of cases in daily life it is also for the interest of the purchaser to secure tardy performance, rather than to be compelled to seek redress through legal proceedings. The law protects and fosters such amicable arrangements. It does not allow the purchaser to extend the time one day and repudiate the arrangement the next. It does not authorize him to throw the burden of performing upon the other party and then shift his ground and say that the other has performed in his own wrong. If such license were allowed it would destroy all certainty in this class of commercial transactions and leave the parties practically without law to restrain or guide them.
*748 For these reasons I am of the opinion that the question in this case is simply one of statutory restriction. And upon that question I am inclined to think, though my conclusion is not free from doubt, that so long as the parol agreement of the officer was executory it imposed no binding obligation upon the Government. When the chief of the clothing bureau told the contractor he must furnish the goods, the contractor should have had the arrangement reduced to writing as required by the statute, or should have stood upon the contract and assumed the liabilities which it then imposed. Attempting to perform amid the circumstances then existing involved new risks, and those new risks would rest upon him until in a legal manner they were assumed by the Government. That assumption of the risk would have happened if the Government had accepted the goods, or if it had entered into a new contract in the manner prescribed by the statute. Neither of these events happening, the risk remained with contractor.
Bichardson, J., was absent when this decision was announced.